UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| OSCAR SANCHEZ, MARCUS WHITE, TESMOND MCDONALD, MARCELO PEREZ, ROGER MORRISON, KEITH BAKER, PAUL WRIGHT, TERRY MCNICKELS, AND JOSE MUNOZ; *On Their Own And On Behalf Of A Class Of Similarly Situated Persons*, <br>      *Petitioners/Plaintiffs*, <br> <br> v. <br> <br> DALLAS COUNTY SHERIFF MARIAN BROWN, *In Her Official Capacity; DALLAS COUNTY, TEXAS,* <br>      *Respondents/Defendants.* | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | Case No. 3:20-cv-00832 |

## MEMORANDUM IN SUPPORT OF PARTIALLY OPPOSED MOTION TO INTERVENE BY THE STATE OF TEXAS, GOVERNOR OF TEXAS, AND ATTORNEY GENERAL OF TEXAS

## TABLE OF CONTENTS

Table of Authorities ........................................................................................ ii

Introduction ..................................................................................................... 1

Argument ......................................................................................................... 3

   I.  The Court Should Permit the State Intervenors to Intervene Under
      Civil Rule 24(a)(2). ................................................................................ 3

      A.  The State Intervenors have important interests that relate to
          the subject of this action. .......................................................... 4

      B.  Disposition of this action will impair the State Intervenors'
          interests. ..................................................................................... 7

      C.  The current parties cannot show that they adequately represent
          the State Intervenors' interests. .............................................. 10

      D.  The request to intervene is timely. .......................................... 12

  II.  Alternatively, the Court Should Permit the State Intervenors to
      Intervene Under Civil Rule 24(b)(1)(B). ............................................ 12

Conclusion ..................................................................................................... 14

Certificate of Conference .............................................................................. 16

Certificate of Service ..................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**

*Addington v. Tex.*,
   441 U.S. 418 (1979) ................................................................ 5

*Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*,
   458 U.S. 592 (1982) ............................................................ 4, 5

*Atlantis Dev. Corp. v. United States*,
   379 F.2d 818 (5th Cir. 1967) ............................................... 7, 10

*Brumfield v. Dodd*,
   749 F.3d 339 (5th Cir. 2014) ................................................ 11

*City of El Cenizo v. Tex.*,
   890 F.3d 164 (5th Cir. 2018) ................................................ 10

*City of Safety Harbor v. Birchfield*,
   529 F.2d 1251 (5th Cir. 1976) ................................................ 7

*Ford v. City of Huntsville*,
   242 F.3d 235 (5th Cir. 2001) .................................................. 4

*Gamble v. United States*,
   139 S. Ct. 1960 (2019) ......................................................... 5

*Hundall v. UTEP*,
   No. EP-13-CV-00365-DCG, 2013 WL 12090655 (W.D. Tex. 2013) ........ 6

*In re Abbott*,
   ___ F3d. ___, 2020 WL 1685929 (5th Cir. 2020) .......................... 6

*In re Lease Oil Antitrust Litig.*,
   570 F.3d 244 (5th Cir. 2009) .................................................. 4

*Int'l Mortg. & Inv. Corp. v. Von Clemm*,
   301 F.2d 857 (2d Cir. 1962) .................................................. 12

*Jacobson v. Commonwealth of Mass.*,
   197 U.S. 11 (1905) .............................................................. 5

*John Doe No. 1 v. Glickman*,
   256 F.3d 371 (5th Cir. 2001) ................................................ 11

*Kelly v. Robinson*,
   479 U.S. 36 (1986) .............................................................. 5

*Louisiana v. Texas*,
   176 U.S. 1 (1900) ............................................................... 5

*LULAC v. Clements*,
   884 F.2d 185 (5th Cir. 1989) ................................................ 13

*Marketfare (St. Claude), L.L.C. v. United Fire & Cas. Co.*,
   Nos. 06-7232, 06-7641, 06-7639, 06-7643, 06-7644,
   2011 WL 3349821 (E.D. La. Aug. 3, 2011) ........................................................ 13

*Mass. v. EPA*,
   549 U.S. 497, 520 & n.17 (2007) ........................................................................ 5

*Nuesse v. Camp*,
   385 F.2d 694 (D.C. Cir. 1967) ........................................................................ 10

*Pyle-Nat'l Co. v. Amos*,
   172 F.2d 425 (7th Cir. 1949) ........................................................................ 12

*Russell v. Harris County*,
   No. 4:19-cv-00226 (S.D. Tex) ................................................................... 3, 10

*Sierra Club v. City of San Antonio*,
   115 F.3d 311 (5th Cir. 1997) ........................................................................ 5

*Sierra Club v. Espy*,
   18 F.3d 1202 (5th Cir. 1994) ........................................................................ 12

*Stadin v. Union Elec. Co.*,
   309 F.2d 912 (8th Cir. 1962) ........................................................................ 11

*TCDLA v. Abbott*,
   No. D-1-GN-20-002034 (459th Judicial District Court, Travis County,
   Tex.). ................................................................................................................ 10

*Trbovich v. United Mine Workers*,
   404 U.S. 528 (1972) ....................................................................................... 11

*United States v. LULAC*,
   793 F.2d 636 (5th Cir. 1986) ........................................................................ 13

*Va. House of Delegates v. Bethune-Hill*,
   139 S. Ct. 1945 (2019) ..................................................................................... 4

*Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*,
   834 F.3d 562 (5th Cir. 2016) ..................................................................... 4, 12

**Statutes**
18 U.S.C. § 3626(a)(3)(F) .................................................................................... 3

TEX. CODE CRIM. PROC. art. 2.251 ..................................................................... 6

TEX. CONST. art. IV, § 22 .................................................................................... 7

TEX. GOV'T CODE § 402.021 ............................................................................... 7

TEX. GOV'T CODE § 402.023 ............................................................................... 7

TEX. GOV'T CODE § 418.004(1) .......................................................................... 6

TEX. GOV'T CODE § 418.014 ............................................................................... 6

Tex. Gov't Code § 418.016(a) ..................................................................... 6

Tex. Gov't Code § 418.017(a) ..................................................................... 6

Tex. Gov't Code § 418.018(c) ..................................................................... 6

Tex. Gov't Code § 508.254 .......................................................................... 6

Tex. Gov't Code § 752.053 .......................................................................... 6

Tex. Gov't Code § 752.053(b)(3) ............................................................. 11

**Other Authorities**

7C Charles Alan Wright & Arthur R. Miller, Federal Practice &
   Procedure § 1909 (3d ed.) ...................................................................... 12

**Rules**

Fed. R. Civ. P. 24(a) ............................................................................. 4, 12

Fed. R. Civ. P. 24(a)(2).......................................................................... 3, 7

Fed. R. Civ. P. 24(b)(1)(B)............................................................... 3, 12, 13

## INTRODUCTION

Plaintiffs would have the Court order injunctive or "habeas" relief releasing a class of individuals defined as "[e]veryone in the Dallas County Jail."[1] Their requested relief covers killers, rapists, arsonists, and armed robbers. Plaintiffs want this Court to empty the jail and in the process ignore (1) state court judgments imposing custodial sentences; (2) detainer and transfer requests from other sovereign governments; and (3) state court bail orders. And they ask for this extraordinary relief without certifying a class or trying to satisfy any of the Prison Litigation Reform Act's requirements.

The effect of Plaintiffs' ask is extraordinary. It would include Billy Chemirmir, possibly "one of the state's most prolific serial killers."[2] Chemirmir is accused of murdering 12 women—all between ages 75 and 94—by smothering them to death and making off with their jewelry. A state court judge set secured bail at $13.6 million.[3] The federal government, moreover, has filed an immigration detainer with the Dallas County Jail, which means Chemirmir will be deported in the very unlikely event he ever steps foot outside of jail again.[4] And now Plaintiffs ask this Court to consider

---

[1] ECF No. 1 ¶ 71.

[2] Antonia Noori Farzan, *A Jewelry Box Led Police to Revisit Hundreds of Deaths. They May Have Found a Serial Killer*, WASH. POST (May 20, 2019), https://wapo.st/2wxTJpJ.

[3] Chemirmir's booking information is available at https://www.dallascounty.org/jaillookup/defendant_detail?recno=8701479E-2A8F-4A79-8F26-00343043A503&bookinNumber=18013860&bookinDate=1521653460000&dob=1972-12-08&lastName=CHEMIRMIR&firstName=BILLY&sex=Male&race=Black; Charles Scudder, *Dallas DA Seeks Death Penalty Against Serial Killer Suspect Billy Chemirmir*, DALLAS MORNING NEWS (July 24, 2019), https://bit.ly/3cbtjcy.

[4] *ICE Files Immigration Detainer on Suspected Serial Killer Billy Chemirmir*, NBCDFW (Oct. 10, 2019), https://bit.ly/2ybl8hm.

setting him free because he, and others like him, might possibly be exposed to COVID-19.  It is obvious that releasing Chemirmir, and other violent felons, threatens the public's safety, something echoed by law enforcement and victim's rights advocates.[5] That alone demonstrates the State's interest in this case.[6]

The release of more than 5,000 prisoners during a state-wide pandemic not only places law-abiding citizens at risk of re-offenses, but also imperils the State's efforts to effectively protect the public health in response to the spread of COVID-19 because the added strain that it would place on law enforcement.

The State of Texas, the Governor of Texas, and the Attorney General of Texas ("State Intervenors") seek to intervene to defend the continued custody of Plaintiffs' would-be class.  Because this case implicates State law at every turn, the State Intervenors have an interest in the outcome. They also have an interest in protecting the public's health and safety in the wake of the coronavirus pandemic. These interests are unrepresented in this case.

---

[5] The following declarations were filed in the Southern District of Texas in another case where a federal court was asked to release all the felons from the Harris County jail. The cause number may be different, but the sentiment is the same: flooding the streets with felons during a pandemic endangers public safety, places victims right back in harms way, and taxes law enforcement resources to their breaking point. *See* Ex. 1 *Declaration of Houston Chief of Police Art Acevedo*; Ex. 2 *Declaration of Allen Police Chief Brian Harvey;* Ex. 3 *Declaration of Arlington Police Chief Will Johnson*; Ex. 4 *Declaration of Police Chief Derick Miller*; Ex. 5 *Declaration of Deer Park Chief of Police Gregg Grigg*; Ex. 6 *Declaration of Frisco Police Chief David Shilson*; Ex. 7 *Declaration of Fort Worth Police Chief Edwin Kraus*; Ex. 8 *March 31, 2020 Letter from Garland Police Department;* Ex. 9 *Declaration of Daniel Scesney*; Ex. 10 *Declaration of Irving Police Chief Jeff Spivey*; Ex. 11 *Declaration of Lewisville Police Chief Kevin Deaver*; Ex. 12 *Declaration of Pearland Police Chief Johnny Spires*; Ex. 13 *Declaration of Plano Police Chief Ed Drain*; Ex. 14, *Declaration of Former Plano Police Chief Gregory W. Rushin*; Ex 15 *Declaration of Andy Kahan, Crime-stoppers of Houston*.
[6] *See, e.g.,* Gabrielle Banks, *Harris County Judge Releases Murder Suspect After the Inmate Said He Feared Coronavirus in Jail*, HOUSTON CHRON. (Mar. 23, 2020), https://bit.ly/2y8K7lx.

The Court's recent order also highlights the need for intervention here. On April 9, 2020, the Court ordered Plaintiffs to address "the applicability and effect of 18 U.S.C. § 3626."[7] One "effect" is that the State Intervenors must be permitted to participate: Section 3626(a)(3)(F) provides that no court may order release unless "[a]ny State or local official" is permitted "to intervene in any proceeding relating to such relief." Mandatory intervention under Civil Rule 24(a)(2) is therefore appropriate.[8] State Intervenors are permissible intervenors under Civil Rule 24(b)(1)(B).

For all these reasons, State Intervenors respectfully request that this Court allow them to intervene in this action to defend the State from this short-sighted and legally defective empty-the-jails effort.

## ARGUMENT

## I.   The Court Should Permit the State Intervenors to Intervene Under Civil Rule 24(a)(2).

Under the Federal Rules of Civil Procedure, a non-party must be allowed to intervene (1) when it has an interest relating to the subject of the action and (2) disposing of the action may practically "impair or impede" that interest, (3) unless the parties "adequately represent" that interest.[9] The State Intervenors may intervene as of right in this matter because they satisfy all three requirements.

---

[7] ECF No. 14 at 1.
[8] *See, e.g.*, *Russell v. Harris County*, No. 4:19-cv-00226, ECF No. 46 (S.D. Tex. Mar. 30, 2020) (ordering mandatory intervention).
[9] FED. R. CIV. P. 24(a)(2)v.

## A.    The State Intervenors have important interests that relate to the subject of this action.

The Fifth Circuit has said before that courts may not define the requisite interest for intervention purposes "too narrowly."[10] The State Intervenors have a "direct, substantial, legally protectable interest."[11] And those interests are related to "the subject of the action"—the wide-scale release of 5,000 prisoners confined pursuant to final judgments of conviction, detainer requests, and secured bail orders, all of which are designed to protect the public and ensure operation of the State's criminal justice system.[12] An interest "is sufficient if it is of the type that the law deems worthy of protection, even if the intervenor does not have an enforceable legal entitlement or would not have standing to pursue her own claim."[13]

Together the State of Texas, the Governor of Texas, and the Attorney General of Texas have an interest in the enforcement of State laws, the orderly operation of the State's criminal justice system, the public's safety from recidivism, and the public health in the face of a rapidly developing pandemic. Although the State Intervenors do not need Article III standing to intervene as defendants, their interests at stake here would nevertheless suffice to meet Article III standing's higher bar.[14]

The State of Texas unquestionably has a *parens patriae* interest in the well-being of her citizens.[15] That includes an interest in keeping the public safe from

---

[10] *Ford v. City of Huntsville*, [242 F.3d 235, 240](#) (5th Cir. 2001).
[11] *In re Lease Oil Antitrust Litig.*, [570 F.3d 244, 250](#) (5th Cir. 2009) (quotation omitted).
[12] FED. R. CIV. P. [24(a)](#).
[13] *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, [834 F.3d 562, 566](#) (5th Cir. 2016) (quotation omitted).
[14] *Va. House of Delegates v. Bethune-Hill*, [139 S. Ct. 1945, 1952](#) (2019).
[15] *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, [458 U.S. 592, 607](#) (1982) ("[A] State has a

crime.[16] It also includes an interest in keeping the public healthy in the face of disease. A State "has the right to protect itself against an epidemic of disease which threatens the safety of its members."[17]

The State of Texas also has a sovereign interest in the enforcement of its own laws.[18] As the Fifth Circuit put it, "[t]he state *qua* state has an important sovereign interest" in ensuring that its own statutory schemes are "properly enforced."[19] And like every sovereign, Texas has an interest in overseeing its own criminal justice system.[20] Plaintiffs' requested relief would require this Court to invalidate legal state court orders issued pursuant to the Code of Criminal Procedure and require the Sheriff to ignore blue warrants (parole violation) and immigration detainers in violation of Texas law.[21]

The Governor of Texas and the Attorney General of Texas are both tasked with important responsibilities to further these interests. Chapter 418 of the Texas Government Code, for example, furnishes the Governor with sweeping authority to

---

quasi-sovereign interest in the health and well-being—both physical and economic—of its residents in general."); *see also Mass. v. EPA*, 549 U.S. 497, 520 & n.17 (2007) (noting States are entitled to "special solicitude in [Article III standing] analysis" because of their *parens patriae* status); *Louisiana v. Texas*, 176 U.S. 1, 19 (1900).

[16] *See, e.g.*, *Addington v. Tex.*, 441 U.S. 418, 426 (1979).

[17] *Jacobson v. Commonwealth of Mass.*, 197 U.S. 11, 27-28 (1905); *cf. Sierra Club v. City of San Antonio*, 115 F.3d 311, 315 (5th Cir. 1997).

[18] *Alfred L. Snapp & Son, Inc.*, 458 U.S. at 601 ("the power to create and enforce a legal code" is one "easily identified" example of sovereign interest).

[19] *Sierra Club*, 115 F.3d at 315.

[20] *See Kelly v. Robinson*, 479 U.S. 36, 49 (1986) (noting "the States' interest in administering their criminal justice systems free from federal interference"); *cf. Gamble v. United States*, 139 S. Ct. 1960, 1968 (2019).

[21] *See* TEX. GOV'T CODE § 508.254 (detention under parole warrant); TEX. GOV'T CODE § 752.053 (detainer requirement under the sanctuary cities law); TEX. CODE CRIM. PROC. art. 2.251 (duties related to immigration detainer requests).

5

protect the public from disasters like the coronavirus pandemic, which presents an "imminent threat of widespread or severe damage, injury, or loss of life."[22]

That authority includes the power to declare a state of disaster; to use all available resources of state government and of political subdivisions that are reasonably necessary to cope with a disaster;" to control ingress and egress to and from a disaster area and the movement of persons and the occupancy of premises in the area; and to suspend the operation of certain laws.[23] Notably, Governor Abbott recently exercised this power via Executive Order GA 13, which would curtail the mass releases of suspected and known violent offenders currently incarcerated. And the Attorney General "has general and constitutional authority to represent the state and its officials in all actions in which the state is interested," like this one.[24]

In sum, the State Intervenors have important interests in the public safety and public health, the implementation of the State's criminal justice system, and the enforcement of state laws.[25]

This suit, which seeks to undermine entirely lawful custody orders with a view to setting loose dangerous criminals and arrestees, implicates each of those interests. It also has state-wide implications, which further demonstrates why the State Intervenors should be permitted to intervene. Local officials, like the Defendants,

---

[22] TEX. GOV'T CODE § 418.004(1).
[23] *Id.* §§ 418.014; 418.017(a); 418.018(c); 418.016(a); *see also* Proclamation, Office of Tex. Governor (March 13, 2020).
[24] *Hundall v. UTEP*, No. EP-13-CV-00365-DCG, 2013 WL 12090655, at *3 (W.D. Tex. 2013) (citing TEX. CONST. art. IV, § 22 and TEX. GOV'T CODE §§ 402.021, 402.023).
[25] *See, e.g., In re Abbott*, ___ F3d. ___, 2020 WL 1685929, at *5-7, 12 (5th Cir. 2020) (recognizing Texas's paramount interest and its sweeping "authority to craft measures responsive to [the present] public health emergency").

cannot represent the State's interests because local governments are "not endowed with the same prerogatives in representing the interests of its residents as is the state in protecting the interests of its citizens, particularly where, as here, city and state level interests may be in conflict."[26]

## B. Disposition of this action will impair the State Intervenors' interests.

The State Intervenors must also show "that disposing of the action may as a practical matter impair or impede" their interests.[27] That does not require a would-be intervenor to demonstrate that a judgment in the action would have binding effect on the would-be intervenor. All that matters is whether the judgment "may" have a "practical" impact on the would-be intervenor's interest.[28] A decision awarding the relief plaintiffs seek here—a temporary restraining order, a preliminary injunction, or a "class-wide writ of habeas corpus" releasing more than 5,000 prisoners—will undoubtedly do that.[29] Granting that request will practically impair every interest detailed above.

Injunctive relief will imperil the State's interest in public safety. Plaintiffs' Motion asks for the release of *any* person detained in Dallas County Jail: "*Everyone in the Dallas County Jail* is a proposed class member."[30] That includes both pre-trial detainees,[31] and convicted criminals.[32] In other words, Plaintiffs ask this Court to

---

[26] *City of Safety Harbor v. Birchfield*, 529 F.2d 1251, 1256 n.7 (5th Cir. 1976).
[27] FED. R. CIV. P. 24(a)(2).
[28] *See Atlantis Dev. Corp. v. United States*, 379 F.2d 818, 828-29 (5th Cir. 1967).
[29] ECF No. 1 ¶ 71.
[30] *Id.* (emphasis added).
[31] *Id.* ¶ 66 ("Pre-Adjudication Class").
[32] *Id.* ¶ 67 (Post-Adjudication Class")

order the release more than 5,000 prisoners, including those arrested and convicted for felony charges—including murder, rape, burglary, and domestic violence.

That includes people like Chemirmir, described above. But it includes many others as well. Synthia Franklin, David McKinney, and Shane Wright robbed and murdered a father of two.[33] Jonathan Alexander Gonzalez-Rosales, an active member of a violent transnational gang, stabbed a 17-year-old boy to death.[34] And Talyle Meaderds raped five different women.[35] They are all in Plaintiffs' would-be class.

It's not just murderers and rapists that pose a risk to society. A recent study conducted by a former federal judge shows that the unsecured pretrial release of arrestees pursuant to bail-reform efforts in Chicago, Illinois, has already led to an increase in violent crime there.[36]

Recent events in this State—indeed *in this County*—confirm what this new study suggests. Just last month, Jacques Dshawn Smith murdered two people one week after beating his ex-girlfriend and having his bail set in Dallas County, pursuant to a criminal-friendly system that allowed him to walk after posting only

---

[33] *See* Dana Branham, *3 Suspects Face Capital Murder Charges After Police Say They Set Up Fatal Robbery in Lake Highlands*, DALLAS MORNING NEWS (Apr. 9, 2020), https://bit.ly/2Vexu04; Booking information for Franklin and Wright is available at https://bit.ly/34ASbrC (Franklin) and https://bit.ly/2XEsh4T (Wright).

[34] *See* U.S. IMMIGRATION & CUSTOMS ENFORCEMENT, *ICE Dallas Arrests Salvadoran Gang Member Wanted for Capital Murder* (Apr. 7, 2020), https://bit.ly/3b7PjFa; Gonzalez-Rosales's booking information is available at https://bit.ly/2V2gCL6.

[35] *See* Marjorie Owens, *Ride-Share Driver Suspected in Series of Dallas Rapes*, WFAA (Nov. 4, 2019), https://bit.ly/3e7jYnI; Meaderd's booking information is available at https://bit.ly/2xlG3hT.

[36] *See* Paul G. Cassell & Richard Fowles, *Does Bail Reform Increase Crime?* (Univ. of Utah Coll. of Law, Research Paper No. 349, Mar. 2, 2020) https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3541091; Paul Cassell, *Bail Reform in Chicago Appears to Have Increased Crime*, Volokh Conspiracy (Feb. 19, 2020), https://bit.ly/3b3eRm9.

$1,500.[37]  Plaintiffs here seek to use the current health crisis not to modify the bail system, but simply obviate it—by an unprecedented mass release that defies reason and the history of our justice system.

The threat to public safety is particularly acute for victims of domestic violence. Plaintiffs that this Court orders released would be required to stay at home under existing shelter-in-place orders. That will expose domestic violence victims—a spouse, a child, an elderly relative—to further violence at the hands of the same attacker. That tragic story is already playing out across the world.[38]

Even non-violent offenders may pose real risks. Fraudsters will be presented with new opportunities to prey on Texans, especially the elderly, during this pandemic.[39] Likewise burglars, regarded incorrectly by some as non-violent; habitual drunk drivers; and even those who have committed intoxication manslaughter, would be free to roam the streets under the Plaintiffs' requested relief.[40] And while Plaintiffs may propose that this large group of felons could be closely monitored while on the streets, there are simply not enough ankle monitors in the world to guarantee that this group won't reoffend.

---

[37] Editorial Board, *Two-time felon, accused in A&M Commerce killings, walked out of jail for as little as $1,500*, DALLAS MORNING NEWS (Feb. 6, 2020), https://www.dallasnews.com/opinion/editorials/2020/02/06/two-women-at-texas-am-commerce-might-be-alive-if-their-alleged-killer-wasnt-out-on-bond/.

[38] *See* Emma Graham Harrison, *et al.*, *Lockdowns Around the World Bring Rise in Domestic Violence*, GUARDIAN (Mar. 28, 2020), https://bit.ly/2xsxyBs; Marissa J. Lang, *Domestic Violence Will Increase During Coronavirus Quarantines and Stay-at-Home Orders, Experts Warn*, WASH. POST (Mar. 27, 2020), https://wapo.st/2QRVOn4.

[39] Zack Friedman, *Beware These Coronavirus Scams*, FORBES (Mar. 20, 2020), https://bit.ly/2xzJT6B.

[40] It is worth pointing out that Plaintiffs not only seek the release of those currently in the jail, but also those that *will be* arrested during the life of the Court's order. ECF No. 1 ¶¶ 66-67v ("all current *and future* detainees"). This is alarming because it is simply impossible to know exactly what kind of individuals will be brought into the Dallas County Jail and then promptly released.

This lawsuit matters to our fellow citizens and potentially impacts the State Intervenors' institutional and legal interests.[41] Releasing over 5,000 criminals and arrestees would violate Texas law. State criminal judgments, of course, are final adjudications under state law. And state law establishes an orderly process for releasing pre-trial arrestees. State law, likewise, requires local governments to comply with federal immigration detainer requests and parole warrants from the Texas Department of Criminal Justice, all of which would fall to the wayside if Plaintiffs get their way.[42]

Moreover, any decision here might impact other cases where the State or its officials *are* parties. That interest alone suffices.[43] Any decision here may impact ongoing proceedings in federal and state court.[44] The State Intervenors are parties in those lawsuits and Plaintiffs in those cases have similarly requested emergency relief ordering the release of a large class of prisoners.

### C.    The current parties cannot show that they adequately represent the State Intervenors' interests.

The next question is whether the existing parties adequately represent the State Intervenors' interests. Arguably, the burden of persuasion on that question belongs to the parties.[45] But even if the State Intervenors shoulder it, their burden is

---

[41] *See Nuesse v. Camp*, 385 F.2d 694, 700v (D.C. Cir. 1967) (noting "a state official directly concerned in effectuating the state policy has an 'interest' in a legal controversy involving the Comptroller which concerns the nature and protection of the state policy").

[42] *See* TEX. GOV'T CODE § 752.053(b)(3); *see also City of El Cenizo v. Tex.*, 890 F.3d 164, 173 (5th Cir. 2018) (upholding the law against various constitutional challenges).

[43] *Atlantis Dev. Corp.*, 379 F.2d at 828-29.

[44] *See, e.g., Russell v. Harris County*, No. 4:19-cv-00226, ECF No. 46 (S.D. Tex. Mar. 30, 2020); *TCDLA v. Abbott*, No. D-1-GN-20-002034 (459th Judicial District Court, Travis County, Tex.).

[45] *See* 7C Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE § 1909 (3d ed.).

"not a substantial one."[46] Then-Judge Blackmun summarized three scenarios when inadequate representation obviously exists—namely, when the party sought to be replaced (1) may be colluding with the opposing party, (2) takes a position adverse to the would-be intervenor, or (3) fails to diligently pursue the would-be intervenor's interests.[47] "'The potential intervener need only show that the representation *may* be inadequate.'"[48]

At this point, State Intervenors do not know how (or if) the Defendants intend to defend against this action. But public reports indicate the Dallas County Sheriff "has tried to limit the jail population."[49] Indeed, over a ten-day period last month, the Dallas County Jail released 400 inmates.[50]

State Intervenors do not mean to suggest that Defendants are colluding with the plaintiffs or affirmatively taking an adverse position. But these reports nevertheless demonstrate that the defendants' representation "*may* be" inadequate.[51] This is especially true considering that Defendants stand to save money if they depopulate the jail, *e.g.* avoiding medical costs.

Where an existing party and the would-be intervenor have a unity of interests, representation is inadequate where the existing party fails to diligently pursue those

---

[46] *Brumfield v. Dodd*, 749 F.3d 339, 345 (5th Cir. 2014).

[47] *Stadin v. Union Elec. Co.*, 309 F.2d 912, 919 (8th Cir. 1962).

[48] *John Doe No. 1 v. Glickman*, 256 F.3d 371, 380 (5th Cir. 2001) (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)) (emphasis added).

[49] Cassandra Jaramillo et al., *After Five Dallas County Inmates Test Positive for COVID-19, Here's How Officials Responded*, Dallas Morning News (Mar. 25, 2020), https://bit.ly/2VpyM8V.

[50] *Id.*

[51] *Glickman*, 256 F.3d at 380.

interests.[52] That may be true here. Intervention imposes no significant burden to the Court or the parties, but serves a crucial purpose: ensuring that Texas's interests are zealously represented before the Court by the elected officials entrusted with defending the state's interests.

### D. The request to intervene is timely.

Finally, this motion to intervene is "timely."[53] The Fifth Circuit has noted that Rule 24's timeliness inquiry "is contextual; absolute measures of timeliness should be ignored."[54] Plaintiffs filed this case on April 9, 2020.[55] The State Intervenors have sought to intervene at the earliest possible moment. The State Intervenors, therefore, seek intervention well "before discovery [has] progressed" and they do not "not seek to delay or reconsider phases of the litigation that ha[ve] already concluded."[56]

## II. Alternatively, the Court Should Permit the State Intervenors to Intervene Under Civil Rule 24(b)(1)(B).

If the Court does not grant the State Intervenors intervention as of right—which it should—it should grant for permissive intervention because the State Intervenors' position and this suit have a common question of law or fact.[57]

---

[52] *Int'l Mortg. & Inv. Corp. v. Von Clemm*, 301 F.2d 857, 861 (2d Cir. 1962) (noting existing parties "have shown a conspicuous disinterest in asserting the rights of" the would-be intervenor); *Pyle-Nat'l Co. v. Amos*, 172 F.2d 425, 427 (7th Cir. 1949) (permitting intervention where plaintiffs "arranged a settlement with the defendants for exactly one-half of the sum contended by the suit to be due").
[53] FED. R. CIV. P. 24(a).
[54] *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994).
[55] ECF No. 1.
[56] *Wal-Mart Stores*, 834 F.3d at 565.
[57] *See* FED. R. CIV. P. 24(b)(1)(B) ("On timely motion, the court may permit anyone to intervene who . . . (B) has a claim or defense that share with the main action a common question of law or fact.").

To obtain permissive intervention under Rule 24, the State Intervenors must demonstrate that: (1) the motion to intervene is timely; (2) their claim or defense has a question of law or fact in common with the existing action; and (3) intervention will not delay or prejudice adjudication of the existing parties' rights.[58] The State Intervenors satisfy each of these factors.

First, as stated above, the State Intervenors' motion is timely.[59] Second, because the State Intervenors have filed the motion before the due date for the responsive pleadings this Court has requested, granting the Motion will not cause any delay or prejudice to the existing parties' rights to litigate the case.[60] Third, the State Intervenors share common questions of law and fact with the main action. Jails across the State are undertaking efforts to combat and contain the spread of coronavirus in jail. The Plaintiffs' lawsuit will call into question prisoners' custody *everywhere*. Only the State Intervenors will provide a state-wide perspective.

In considering whether to grant permissive intervention, the Court may also consider "(1) whether an intervenor is adequately represented by other parties; and (2) whether intervention is likely to contribute significantly to the development of the underlying factual issues."[61]

---

[58] *Id*v.; *see United States v. LULAC*, 793 F.2d 636, 644 (5th Cir. 1986) ("Although the court erred in granting intervention as of right, it might have granted permissive intervention under Rule 24(b) because the intervenors raise common questions of law and fact.").

[59] *See supra* Part I.D.

[60] *See* ECF No. 14 at 1.

[61] *Marketfare (St. Claude), L.L.C. v. United Fire & Cas. Co.*, Nos. 06-7232, 06-7641, 06-7639, 06-7643, 06-7644, 2011 WL 3349821, at *2 (E.D. La. Aug. 3, 2011) (citing *LULAC v. Clements*, 884 F.2d 185, 189 (5th Cir. 1989)).

These factors provide additional support for granting permissive intervention in this case. As already discussed, the State Intervenors have a significant interest in protecting the public and overseeing the state criminal justice system.[62] These interests will not be adequately represented by Defendants.[63] And the State Intervenors' ability to address these interests will contribute significantly to the just and equitable resolution of the constitutional questions presented.

Thus, even if the Court concludes that the State Intervenors are not entitled to intervene as of right, it should grant their request for permissive intervention.

## CONCLUSION

The Court should grant the State Intervenors' motion to intervene as of right or, alternatively, to intervene permissively, and grant them all the same rights and responsibilities as a party to the lawsuit.

---

[62] *See supra* Part I.A.
[63] *See supra* Part I.C.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

RYAN L. BANGERT
Deputy First Assistant Attorney General

DARREN L. MCCARTY
Deputy Attorney General for Civil Litigation

THOMAS A. ALBRIGHT
Chief for General Litigation Division

*/s/ Adam Arthur Biggs*
ADAM ARTHUR BIGGS
Attorney-in-Charge
Special Litigation Counsel[64]
Texas Bar No. 24077727
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 | FAX: (512) 320-0667
adam.biggs@oag.texas.gov

**COUNSEL FOR THE STATE OF TEXAS,
THE GOVERNOR OF TEXAS, AND
THE ATTORNEY GENERAL OF TEXAS**

---

[64] Exempted from admission to practice requirement pursuant to Local Rule 83.11.

## CERTIFICATE OF CONFERENCE

I hereby certify that on April [13], 2020, I conferred with counsel for Plaintiffs and Defendants via email regarding the substance of the foregoing instrument. Plaintiffs stated that they are opposed to this motion. Defendants stated they are unopposed to this motion

/s/ Adam Arthur Biggs

ADAM ARTHUR BIGGS
Special Litigation Counsel

## CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2020, a true and correct copy of the foregoing document was transmitted using the CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record.

/s/ Adam Arthur Biggs

ADAM ARTHUR BIGGS
Special Litigation Counsel