IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| OSCAR SANCHEZ, et al., on their own and on behalf of a class of others similarly situated,<br><br>*Plaintiffs/Petitioners,*<br><br>v.<br><br>DALLAS COUNTY SHERIFF MARIAN BROWN, in her official capacity, and DALLAS COUNTY, TEXAS,<br><br>*Defendants/Respondents.* | Civil Action No. 3:20-cv-00832-E |

**REPLY IN SUPPORT OF PARTIALLY OPPOSED MOTION TO INTERVENE BY THE STATE OF TEXAS, GOVERNOR OF TEXAS, AND ATTORNEY GENERAL OF TEXAS**

**TABLE OF CONTENTS**

**INTRODUCTION** ........................................................................................................ 1

**ARGUMENT** ................................................................................................................. 2

**I. The Court Should Order the State Intervenors' Mandatory Intervention Under Civil Rule 24(a).** .............................................................. 3

    A. The State Intervenors have important interests that relate to the subject of this action. ........................................................................................ 3

    B. Plaintiffs cannot show that the County Defendants adequately represent the State Intervenors' interests. ................................................... 6

    C. Plaintiffs do not contest that the request to intervene is timely or that disposition of this action will impair the State Intervenors' interests. ............................................................................................................ 9

**II. Alternatively, the Court Should Order the State Intervenors' Permissive Intervention Under Civil Rule 24(b).** ........................................... 9

**CONCLUSION** ........................................................................................................... 10

**INTRODUCTION**

Plaintiffs ask this Court to deny the State Intervenors' motion to intervene. In doing so, they necessarily ask the Court to part ways with the Southern District of Texas, which ordered mandatory intervention for the same three parties—the State of Texas, the Governor of Texas, and the Attorney General of Texas—in a functionally identical case.[1] The State Intervenors' briefing there was instrumental to the court's decision denying two Temporary Restraining Orders.[2]

More importantly, Plaintiffs ask this Court to ignore the PLRA's clear text. As this Court has already recognized,[3] the PLRA is integral in this case. Under the PLRA, the State Intervenors *must* be permitted to participate: Section 3626(a)(3)(F) provides that no court may order a prisoner's release unless "[a]ny State or local official" is permitted "to intervene in any proceeding relating to such relief."

To avoid the PLRA's obvious application to this motion, Plaintiffs try to radically reframe the relief that they seek. They now insist that their complaint does *not* seek prisoners' release—at least not for everyone in the putative class.[4] That claim is belied by Plaintiffs' original pleading,[5] amended[6] pleading, and expert declarations.[7] Regardless, the PLRA does not mandate intervention only where

---

[1] *See Russell v. Harris County*, No. 4:19-cv-00226, ECF No. 46 (S.D. Tex. Mar. 30, 2020) (ordering mandatory intervention).
[2] *See Russell v. Harris County*, No. 4:19-cv-00226, ECF No. 122 (S.D. Tex. Apr. 14, 2020).
[3] *See* ECF No. 14 at 1.
[4] *See, e.g.*, ECF No. 44 at 6-7, 9, 13.
[5] ECF No. 1 at 7 ("Petitioners/Plaintiffs (hereinafter 'Plaintiffs')—classes of persons incarcerated at the Dallas County Jail—bring this action and request *immediate release of all Plaintiffs and Class Members*." (emphasis added)); *see also id.* at 36-38, 42-43.
[6] ECF No. 38-1 at 8 ("Petitioners/Plaintiffs (hereinafter 'Plaintiffs')—classes of persons incarcerated at the Dallas County Jail—bring this action and request *immediate release of all Plaintiffs and Class Members*." (emphasis added)); *see also id.* at 39-41, 49-50.
[7] ECF No. 47-2 at 29-30 (Supplemental Declaration of Dr. Cohen discussing release of inmate and depopulating the jail); ECF No. 3-2 at 30, 31, 32 (Declaration of Dr. Cohen opining that "***steps should immediately be taken to release any inmate*** who is over the age of 50 or otherwise medically vulnerable as described in Paragraph 23 above to protect them from a serious risk of death. No less intrusive intervention will adequately address the public health risk posed by COVID-19 in the Dallas County Jail environment.").

release is the sole relief at issue. It mandates intervention "in any *proceedings relating to* such relief."[8] No matter how Plaintiffs' frame things, this proceeding to depopulate the Dallas County Jail at least "relat[es] to [the] relief" of release.

Thus, mandatory intervention under Civil Rule 24(a) is appropriate. At the very least, the State Intervenors should be permitted to intervene under Civil Rule 24(b).

## ARGUMENT

To assist the Court in understanding the stakes of this case and the nature of the State's interest in it, State Intervenors briefed the mandatory and permissive intervention factors under Rule 24(a)(2) and Rule 24(b)(1). But as just explained, this motion is even more straightforward under Rule 24(a)(1) because State Intervenors have been "given an unconditional right to intervene by a federal statute." The PLRA is a "federal statute."[9] And it provides the State Intervenors "shall have *the right* to intervene" in a case like this one.[10] Plaintiffs point to no case holding the PLRA creates only a limited right to intervention.[11] Rather, it extends to the entire "proceeding."[12] The only question, then, is whether this motion to intervene is "timely."[13] Plaintiffs concede that it is.[14] That should be the end of the matter under Rule 24(a)(1).

---

[8] 18 U.S.C. § 3626(a)(3)(F) (emphasis added).
[9] FED. R. CIV. P. 24(a)(1).
[10] 18 U.S.C. § 3626(a)(3)(F) (emphasis added).
[11] ECF No. 44 at 13-14.
[12] *Id.*
[13] FED. R. CIV. P. 24.
[14] *See* ECF No. 44 at 8.

I.   **The Court Should Order the State Intervenors' Mandatory Intervention Under Civil Rule 24(a).**

Even if this Court looks past the open-and-shut analysis under Rule 24(a)(1) and proceeds to analyze this motion under Rule 24(a)(2) instead, the State Intervenors satisfy all three requirements.

A.   **The State Intervenors have important interests that relate to the subject of this action.**

Plaintiffs spend most of their brief trying to undercut the State Intervenors' interests in this case.[15] But Rule 24(a)(2)'s requirement of an interest relating to the subject of the action is not a high bar. A would-be intervenor need not even point to an interest that would suffice to confer standing.[16] State Intervenors have nevertheless done that here.[17] Because State Intervenors meet Article III's much higher bar for a qualifying interest, Plaintiffs' arguments are meritless.

First, the State of Texas is unquestionably interested in: the public health,[18] the public safety,[19] the operation of Texas's criminal justice system,[20] and the enforcement of its own laws.[21] Plaintiffs are willing only to "assume" the existence of a *parens patriae* interest[22] that the Supreme Court has recognized for more than 100 years.[23] All Plaintiffs can offer are suggestions that their own approach—releasing pre-trial and post-conviction detainees during a state-wide pandemic—would better serve "the interest of keeping the public healthy and safe."[24] But that is simply a

---

[15] *See* ECF No. 44 at 8-14.
[16] *Texas v. United States*, 805 F.3d 653, 659 (5th Cir. 2015) ("[A]n interest is sufficient if it is of the type that the law deems worthy of protection, even if the intervenor does not have an enforceable legal entitlement or would not have standing to pursue her own claim.").
[17] *See* ECF No. 27 at 9-12.
[18] *Jacobson v. Massachusetts*, 197 U.S. 11, 27-28 (1905).
[19] *Addington v. Texas*, 441 U.S. 418, 426 (1979).
[20] *Kelly v. Robinson*, 479 U.S. 36, 49 (1986).
[21] *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 601 (1982).
[22] ECF No. 44 at 13.
[23] *Alfred L. Snapp*, 458 U.S. at 600-07 (collecting cases).
[24] ECF No. 44 at 13; *see also id.* at 16 (claiming State Intervenors "fail to reconcile their alleged interest in "keeping the public healthy in the face of disease" with their opposition to the Sheriff's alleged reduction in the jail population during the pandemic").

disagreement about how to protect the public and order the State's criminal justice system. That Plaintiffs disagree with the State Intervenors' approach does not mean they lack a qualifying interest. In fact, it highlights the need for State Intervenors' participation here as Plaintiffs seek to impose *their view* of the proper disaster response on Texas and its citizens. If a single innocent Texan ends up killed or hurt by a released inmate, the public will not look to the Plaintiffs or their special interest lawyers for answers—it instead will be left to State officials to pick up the tragic pieces.

Second, the Governor is unquestionably interested in carrying out his statutory duty to respond to the COVID-19 pandemic. Chapter 418 of the Texas Government Code makes that clear. Plaintiffs claim that Chapter 418 "focuses not on endowing power in the Governor."[25] That would be news to anyone who has read the text of the statute. Subchapter B ("Powers and Duties of Governor") says the Governor "is responsible for meeting (1) the dangers to the state and people presented by disasters; and (2) disruptions to the state and people caused by energy emergencies."[26] To that end, it confers sweeping authority to respond to the present pandemic.[27] Plaintiffs' observation that Chapter 418 contains only a few explicit references to prisons and jails is completely beside the point. The Legislature did not—because it could not—enumerate every aspect of state business that might be potentially impacted by a disaster like this one.

Third, Plaintiffs argue the Attorney General has no "interest in preventing the release of 5,000 people . . . most of whom . . . the Due Process Clause of the Fourteenth Amendment presumes innocent."[28] Despite boasting of their "extensive

---

[25] ECF No. 44 at 11.
[26] TEX. GOV'T CODE § 418.011.
[27] *See, e.g., id.* §§ 418.014, 418.017(a), 418.018(c), 418.016(a).
[28] ECF No. 44 at 9.

4

knowledge" of the legal issues presented here,[29] Plaintiffs have demonstrated their misunderstanding of basic constitutional principles. The Supreme Court made clear years ago that the presumption of innocence "has *no application* to a determination of the rights of a pretrial detainee."[30] The pre-trial detainees in Plaintiffs' putative class may be presumed innocent with respect to a final judgment of conviction and any attendant punishment. But they are not presumed innocent with respect to their current confinement: Every single one of them is in custody pursuant to a probable cause determination in which a judge found that he likely committed the charged offense.[31] In any case, the Attorney General's responsibilities include "prosecut[ing] and defend[ing] all actions in which the state is interested."[32] And providing the relief Plaintiffs seek will violate state law,[33] and create a *stare decisis* effect in future cases handled by the Attorney General.[34] The Attorney General is a "state official" with an interest in a "legal controversy" that may affect state law.[35]

The Southern District of Texas already found that the State, the Governor, and the Attorney General had interests that justified mandatory intervention in a similar lawsuit.[36] One of Plaintiffs' lawyers was also involved in that case and even *consented to the State Interveners participation*. It's curious why that would not be the case here as well. The Court should reject Plaintiffs' invitation to break ranks and ignore Fifth Circuit precedent urging courts not to define the requisite interest "too narrowly."[37]

---

[29] ECF No. 18 at 25-26.
[30] *Bell v. Wolfish*, 441 U.S. 520, 533 (1979) (emphasis added).
[31] *Gerstein v. Pugh*, 420 U.S. 103, 119-25 (1975).
[32] TEX. GOV'T CODE § 402.021; *see also* TEX. CONST. art. IV, § 22.
[33] *See* ECF No. 27 at 10 n.21.
[34] *Atlantis Dev. Corp. v. United States*, 379 F.2d 818, 828-29 (5th Cir. 1967).
[35] *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967) (ordering intervention of Wisconsin Commissioner of Banks); *see also Smith v. Pangilinan*, 651 F.2d 1320 (9th Cir. 1981) (ordering intervention of U.S. Attorney General); *Dixon v. Heckler*, 589 F. Supp. 1512 (S.D.N.Y. 1984) (ordering intervention of Commissioner of N.Y. Department of Social Services).
[36] *See Russell v. Harris County*, No. 4:19-cv-00226, ECF No. 46 (S.D. Tex. Mar. 30, 2020) (ordering mandatory intervention).
[37] *Ford v. City of Huntsville*, 242 F.3d 235, 240 (5th Cir. 2001).

### B. Plaintiffs cannot show that the County Defendants adequately represent the State Intervenors' interests.

Plaintiffs fare no better in their attempt to show that the County Defendants will adequately protect State Intervenors' interests. The showing under the inadequate-representation prong is "not a substantial one."[38] "'The potential intervener need only show that the representation *may* be inadequate.'"[39] State Intervenors have done that here.[40]

Perhaps recognizing that this case has state-wide consequences, Plaintiffs endeavor to recast the County Sheriff as a state officer.[41] The Sheriff occupies an office created by state law. But she is "elected by the qualified voters of [her] *county*."[42] There is no serious argument that the *County* Sheriff has a state-wide constituency. Or that the Sheriff is answerable to Texans outside of Dallas that may be impacted by mass release, seeing as how nothing will keep these inmates in Dallas once released. And local governments are "not endowed with the same prerogatives in representing the interests of [their] residents as is the state in protecting the interests of its citizens, particularly where, as here, city and state level interests may be in conflict."[43] "Political subdivisions of States—counties, cities, or whatever—never were and never have been considered as sovereign entities."[44] So too their officers.

---

[38] *Brumfield v. Dodd*, 749 F.3d 339, 345 (5th Cir. 2014).
[39] *John Doe No. 1 v. Glickman*, 256 F.3d 371, 380 (5th Cir. 2001) (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)) (emphasis added).
[40] *See* ECF No. 27 at 15-17.
[41] *See* ECF No. 44 at 14 ("[T]he Sheriff is not merely a local officer, but an officer of the State, in the judicial branch.").
[42] TEX. CONST. art. V, § 23 (emphasis added).
[43] *City of Safety Harbor v. Birchfield*, 529 F.2d 1251, 1256 n.7 (5th Cir. 1976).
[44] *Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353, 362 (2009) (quotation omitted); *see also Avery v. Midland County*, 406 S.W.2d 422, 426 (Tex. 1966), *rev'd on other grounds*, 390 U.S. 474 (1968) (noting a County "is a subordinate and derivative branch of state government"); *Wasson Interests, Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 430 (Tex. 2016) (noting a County "represent[s] no sovereignty distinct from the state and possess[es] only such powers and privileges" as the State confers upon it (quotation omitted)).

Next, Plaintiffs point to authority suggesting that a "heightened showing" is required when the existing party whose representation may prove inadequate is a governmental entity.[45] But they neglect to point out that in every example they provide, (1) the would-be intervenor was a private litigant or a political subdivision and (2) the public interest was already being represented by the State itself or some other party with a state-wide constituency.[46] Permitting discrete individuals or subdivisions to intervene for the sake of staking out a different position than the State is different from permitting state officials to represent the State's interests. That is why the presumption Plaintiffs point to is "restricted . . . to those suits involving matters of sovereign interest."[47] In other words, the premise of the "heightened showing" requirement is the State's sovereign interest over its political subdivisions and its *parens patriae* interest in speaking for its citizens—the very thing Plaintiffs were barely willing to "assume" elsewhere in their response.[48]

Bizarrely, Plaintiffs mistake State Intervenors' discussion of the various ways to show inadequacy as some kind of concession. State Intervenors' acknowledgment that County Defendants may not be colluding with the Plaintiffs is not "a nod" to the presumption of adequacy when the State is a party.[49] (After all, that presumption *bolsters* the need for State involvement.) Instead, State Intervenors were simply explaining the black-letter principle that intervention is appropriate even where the existing parties are not engaged in outright collusion. In other words, existing representation is obviously inadequate when the party sought to be replaced (1) may

---

[45] ECF No. 44 at 15.
[46] *See Hopwood v. Texas*, 21 F.3d 603, 605 (5th Cir. 1994) (State of Texas was adequately representing interests of private litigants); *Del. Valley Citizens' Council for Clean Air v. Pennsylvania*, 674 F.2d 970, 973 (3d Cir. 1982) (Commonwealth of Pennsylvania was adequately representing interests of legislators); *Edwards v. City of Houston*, 78 F.3d 983, 1005 (5th Cir. 1996) (refusing to apply the presumption of adequacy to the City of Houston because it lacked a sovereign interest).
[47] *Edwards*, 78 F.3d at 1005.
[48] ECF No. 44 at 13.
[49] *Id.* at 16.

be colluding with the opposing party, (2) may take a position adverse to the would-be intervenor, or (3) may fail to diligently pursue the would-be intervenor's interests.[50]

State Intervenors are not "speculating" that the County Defendants may not fully or zealously defend the State's interests. Rather, State Intervenors have pointed to public statements made by the Sheriff as well as the dollars-and-cents consequences of a decision here that may influence *how* the County Defendants will litigate this case.[51] That is why the County Defendants' decision to file responsive pleadings here is beside the point.[52] Caselaw asks whether an existing party's representation (1) may prove inadequate (2) *during the course* of the litigation.[53] If State Intervenors waited to seek intervention until after the County Defendant's advocacy slackened, Plaintiffs would surely cry foul—insisting intervention was late or calculated only to delay proceedings. The better course is to follow Supreme Court precedent, which asks—at the earliest possible time—whether representation "may be" inadequate.[54] The State Intervenors have shown that possibility here.

---

[50] *Stadin v. Union Elec. Co.*, 309 F.2d 912, 919 (8th Cir. 1962).
[51] Cassandra Jaramillo et al., *After Five Dallas County Inmates Test Positive for COVID-19, Here's How Officials Responded*, Dallas Morning News (Mar. 25, 2020), https://bit.ly/2VpyM8V; ECF No. 27 at 16 (noting County Defendants may stand to save money if the population of the Dallas County Jail falls).
[52] *See* ECF No. 44 at 16-17 (noting the Sheriff "has now responded to the petition").
[53] *See, e.g.*, *Int'l Mortg. & Inv. Corp. v. Von Clemm*, 301 F.2d 857, 861 (2d Cir. 1962) (noting existing parties "have shown a conspicuous disinterest in asserting the rights of" the would-be intervenor); *Pyle-Nat'l Co. v. Amos*, 172 F.2d 425, 427 (7th Cir. 1949) (permitting intervention where plaintiffs "arranged a settlement with the defendants for exactly one-half of the sum contended by the suit to be due").
[54] *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972) ("The requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal.").

## C. Plaintiffs do not contest that the request to intervene is timely or that disposition of this action will impair the State Intervenors' interests.

Plaintiffs assert that the State Intervenors "can meet only the first" requirement for intervention—"timeliness."[55] Accordingly, Plaintiffs concede that the State Intervenors' motion is timely.

In that same sentence, however, Plaintiffs say that State Intervenors fail the remaining three requirements. *Id.* But they never actually responded to State Intervenors' arguments that their interests will be impaired. State Intervenors briefed that question extensively.[56] Plaintiffs offered no response. Instead, they briefed only whether State Intervenors have a qualifying interest[57] and whether the County Defendants will adequately represent that interest.[58] Because Plaintiffs have forfeited any objection on this score, State Intervenors will not rehash those arguments here.

## II. Alternatively, the Court Should Order the State Intervenors' Permissive Intervention Under Civil Rule 24(b).

If the Court does not grant the State Intervenors intervention as of right—which it should—it should grant for permissive intervention because the State Intervenors' position and this suit have a common question of law or fact.[59]

Plaintiffs' primary response on this point is to suggest that "the main effect of intervention will be to delay a medically-urgent case."[60] If Plaintiffs mean that their road to victory may be a tougher slog, then they are correct. But if they mean the State Intervenors will unfairly delay these proceedings, then they are wrong. State Intervenors have already demonstrated their willingness to pursue this litigation diligently by filing their combined (1) motion to dismiss, (2) response opposing the

---

[55] ECF No. 44 at 8.
[56] *See* ECF No. 27 at 12-15.
[57] ECF no. 44 at 8-14.
[58] *Id.* at 14-17.
[59] ECF No. 27 at 17-19.
[60] ECF No. 44 at 18.

9

TRO request, and (3) response opposing class certification within the Court's expedited briefing schedule. Plaintiffs, by contrast, made a flurry of filings, like their separate response to this motion, an amended class-action complaint, and a forthcoming "omnibus" reply.

Plaintiffs also respond that State Intervenors will "offer no additional arguments" that contribute to the resolution of this case. But a simple glance at the responsive pleadings filed a few days ago demonstrates otherwise. In their pleading, State Intervenors raised several arguments that the County Defendants did not. For example, the County Defendants did not explain that the PLRA bars the relief that Plaintiffs seek, that a habeas corpus proceeding may not be combined with a civil action, or that class-wide relief is categorically unavailable in habeas corpus proceedings.[61] State Intervenors have already "contribute[d] to the understanding and adjudication of the case."[62] And it was State Intervenors' arguments that proved dispositive in a similar case where the Southern District of Texas ordered mandatory intervention.[63]

Thus, even if the Court concludes that the State Intervenors are not entitled to intervene as of right, it should grant their request for permissive intervention.

## CONCLUSION

The Court should grant the State Intervenors' motion to intervene as of right or, alternatively, to intervene permissively, and grant them all the same rights and responsibilities as a party to the lawsuit.

---

[61] *Compare* ECF No. 33 at 11-12, 18-21, 25-28, *with* ECF Nos. 34, 36.
[62] ECF No. 44 at 18.
[63] *See Russell v. Harris County*, No. 4:19-cv-00226, ECF No. 122 (S.D. Tex. Apr. 14, 2020) (denying Plaintiffs' requests for two different temporary restraining orders).

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

RYAN L. BANGERT
Deputy First Assistant Attorney General

DARREN L. MCCARTY
Deputy Attorney General for Civil Litigation

THOMAS A. ALBRIGHT
Chief for General Litigation Division


*/s/ Adam Arthur Biggs*
ADAM ARTHUR BIGGS
Special Litigation Counsel
Texas Bar No. 24077727
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 | FAX: (512) 320-0667
adam.biggs@oag.texas.gov

**COUNSEL FOR STATE INTERVENORS**

11

## CERTIFICATE OF SERVICE

    I hereby certify that on April 19, 2020, a true and correct copy of the foregoing document was transmitted using the CM/ECF system, which automatically sends notice and a copy of the filing to all counsel of record.

                                                */s/Adam Arthur Biggs*  
                                                ADAM ARTHUR BIGGS  
                                                Special Litigation Counsel