IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| OSCAR SANCHEZ, et al., on their own | § | |
| and on behalf of a class | § | |
| of others similarly situated, | § | |
| | § | |
| Plaintiffs/Petitioners, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:20-cv-00832-E |
| | § | |
| DALLAS COUNTY SHERIFF | § | |
| MARIAN BROWN, in her official capacity, | § | |
| and DALLAS COUNTY, TEXAS, | § | |
| | § | |
| Defendants/Respondents. | § | |

## ORDER

Plaintiffs, detainees in the Dallas County Jail, filed a First Amended Petition for Writ of Habeas Corpus and Class Action Complaint for Injunctive and Declaratory Relief [Doc. No. 39]. Due to COVID-19 at the jail, Plaintiffs seek relief that includes the immediate release of medically vulnerable subclass members. The State of Texas, the Governor of Texas, and the Attorney General of Texas ("Proposed Intervenors") have filed a Motion to Intervene as defendants in this case [Doc. No. 26] ("the Motion"). Existing Defendants Dallas County, Texas, and the Dallas County Sheriff do not oppose the Motion, but Plaintiffs do [Doc. No. 44]. Proposed Intervenors assert they are entitled to intervene by right under Federal Rule of Civil Procedure 24(a)(2) and also to permissive intervention under Rule 24(b)(1)(B). For the reasons that follow, the Court grants the Motion.

### I.    Introduction

Some of the named Plaintiffs are pretrial detainees. The Court is mindful the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution presumes each individual innocent

1

if, and until, she is convicted of the crime for which she stands accused. But that presumption is not applicable when analyzing the issue of pretrial confinement. In *Bell v. Wolfish*, 441 U.S. 520 (1979), the Supreme Court considered federal pretrial detainees' class action suit against a New York City jail where the inmates were housed in which plaintiffs alleged the conditions of the jail violated their statutory and constitutional rights. In *Bell*, the Supreme Court made the following clear:

> The presumption of innocence is a doctrine that allocates the burden of proof in criminal trials; it also may serve as an admonishment to the jury to judge an accused's guilt or innocence solely on the evidence adduced at trial. . . . Without question, the presumption of innocence plays an important role in our criminal justice system. "The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law." Coffin v. United States, 156 U.S. 432, 453, 15 S.Ct. 394, 403, 39 L.Ed. 481 (1895). But it has no application to a determination of the rights of a pretrial detainee during confinement before his trial has even begun.

*Bell*, 441 U.S. at 533.

In a humane society, even those convicted of the most serious crimes, if they must be confined, should be held as safely as possible. Society should also provide jailed persons with appropriate medical care if an inmate becomes ill.

## II.     Intervention by Right

Proposed Intervenors contend Plaintiffs want "to empty the jail" and seek to intervene to defend the continued custody of the would-be class. They contend they have an interest in the outcome of this case and in protecting the public's health and safety "in the wake of the coronavirus pandemic." Federal Rule of Civil Procedure 24(a)(2) allows the Proposed Intervenors to intervene as a matter of right if they can show:  1) the timeliness of the motion to intervene; 2) an interest relating to the action; 3) disposition of the case may impair or impede their ability to protect the interest; and 4) the interest is not adequately represented by the existing parties. *See* FED. R. CIV.

P. 24(a)(2); *Adam Joseph Res. v. CNA Metals Ltd.*, 919 F.3d 856, 865 (5th Cir. 2019).   Courts should construe Rule 24(a) broadly in favor of intervenors.   *See Adam Joseph*, 919 F.3d at 864. Generally, intervention should be allowed when no one would be hurt and when greater justice can be attained by allowing the intervention.   *Doe #1 v. Glickman*, 256 F.3d 371, 375 (5th Cir. 2001).

In Plaintiffs' response to the Motion, they assert that Proposed Intervenors "have at best a contingent interest in a small number of post-conviction detainees who may belong in State custody."   Plaintiffs also warn the Court of what they view as fearmongering by Proposed Intervenors:

> [Proposed Intervenors] list a parade of horribles, led by an accused serial killer, to attempt to persuade the Court that nothing short of their intervention in this lawsuit will save the State of Texas from the harm of releasing every accused and convicted murderer, rapist, burglar, batterer, fraudster and other criminal from the Dallas County Jail – over 5,000 prisoners in total. . . . Tellingly, [Proposed Intervenors] fail to note that Plaintiffs do not seek such indiscriminate relief in their Complaint.

Plaintiffs contest Proposed Intervenors' claim that Plaintiffs seek to "empty the jail."   Yet Plaintiffs' First Amended Petition for Habeas Corpus and Class Action Complaint requests not only that this Court immediately release medically vulnerable subclass members, but also that the Court continue to release, via habeas or transfer to home confinement, additional class members, including those not considered medically vulnerable, as needed to ensure that persons who remain incarcerated do so under conditions consistent with public health guidelines.   And Plaintiffs' Motion for Class Certification [Doc. No. 17], contemplates a "Pre-Adjudication Class" which includes all current and future detainees in pretrial custody at the jail and a "Post-Adjudication Class" which includes all current and future detainees in post-adjudication custody, with subclasses for those who are medically vulnerable.

3

The Court finds that Proposed Intervenors have met the requirements for an intervention by right.  First, Proposed Intervenors' Motion was timely. Plaintiffs filed their original Petition for Writ of Habeas Corpus and Class Action Complaint and their Motion for Temporary Restraining Order, Preliminary Injunction, and Writ of Habeas Corpus and accompanying brief [Doc. Nos. 1–3] on April 9, 2020. Proposed Intervenors filed their Motion just 4 days later. No discovery had taken place before Proposed Intervenors filed their Motion.

The focus of the second prong is practical. *See Adam Joseph*, 919 F.3d at 867. Considering the broad relief sought by Plaintiffs, the Court sees a direct, substantial, and legally protectable interest relating to this action held by Proposed Intervenors in the proceedings and outcome of this case. *See In re Lease Oil Antitrust Litig.*, 570 F.3d 244, 250 (5th Cir. 2009). If the Court grants Plaintiffs' requested relief, the State itself, the Governor as the State's executive head, and the Attorney General as the State's legal counsel, may be affected in other cases in which they are parties. Plaintiffs seek release of up to nearly 5,000 inmates from the Dallas County Jail due to coronavirus (COVID-19) concerns.  The broad relief requested supports Proposed Intervenors' argument that they have a vested interest, especially during a pandemic, in keeping citizens safe and not draining the law enforcement resources currently available.  *See Addington v. Tex.*, 441 U.S. 418, 426 (1979) (discussing concept of State's *parens patriae* interest in caring for citizens); *City of Safety Harbor v. Birchfield*, 529 F.2d 1251, 1256 n. 7 (5th Cir. 1976) (same).  And as an example of other potential concerns, the release Plaintiffs seek could mean setting aside active parole warrants from the Texas Department of Criminal Justice. *See* TEX. GOV'T CODE ANN. § 508.254.

Plaintiffs claim Proposed Intervenors have only a de minimus interest in the issues before the Court, but Plaintiffs wholly fail to address Proposed Intervenors' asserted interest in crime

4

prevention. [See Doc. No. 27 exhibits Nos. 1-15.]  A mass exodus of inmates from the Dallas County Jail would likely impact citizens outside Dallas County. Exhibit 13 to the Motion is a declaration from City of Plano Police Chief Ed Drain. This declaration was originally filed in response to a similar lawsuit filed in the Southern District of Texas seeking to release inmates from the Harris County Jail. *See Russell v. Harris Cty.*, No. 4:19-cv-00226 (S.D. Tex). Chief Drain wrote, "[i]t is my understanding that the Plaintiffs in this lawsuit are seeking an order releasing over 4,000 felons from the Harris County Jail." Chief Drain explained the strain such a mass release would have on law enforcement during a pandemic and some of the intrastate consequences of releasing 4,000 inmates:

> Organized criminal elements form [sic] the Harris County area are frequently engaged in illegal activity in other jurisdictions hundreds of miles from Harris County. For approximately the last ten years, numerous Asians residents [sic] in the City of Plano, have been victimized by an organized criminal element who specialize in burglarizing homes of Asians. In cases where we have been able to arrest suspects involved in these crimes, we usually can trace their origins to the Harris County area.

Chief Drain, who has been a law enforcement officer for over 25 years, expressed just how often criminal activity crossed county lines:

> Over approximately the last five years, we have seen an increase in criminal activity that involves criminals identifying bank customers who have made large cash withdrawals. The criminals follow the victim's vehicle and steal the cash whenever the customer makes a stop. The criminal activity is referred to as "jugging".  We consistently discover suspects we arrest for these offenses are from the Harris County area.

These intrastate crime concerns were not just a problem Chief Drain faced as a police officer in Plano.  During the time he served as the Police Chief in Amarillo, "almost all suspects we arrested involved in placing skimmers on gas pumps to steal victims' credit/debit card information, were from the Harris County area."  Though Chief Drain's declaration and the other fourteen exhibits attached to the Motion focused on the possible release of inmates from the Harris County Jail,

Proposed Intervenors' concerns are as applicable to Dallas County and its jail as they are to the State of Texas.

Proposed Intervenors have also established the third requirement for intervention by right. The relief requested by Plaintiffs creates a tangible threat to Proposed Intervenors' legally cognizable interests, which would likely be impaired or impeded by this case if the Court barred Proposed Intervenors' participation in this suit or if there were an unfavorable result for Proposed Intervenors in this case. *See Pennsylvania v. President United States of Am.*, 888 F.3d 52, 59 (3d Cir. 2018); *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder*, *Inc.*, 72 F.3d 361, 366 (3d Cir. 1995). Proposed Intervenors have also shown an interest in this suit that is direct, substantial, and legally protectable. *See Brumfield v. Dodd*, 749 F.3d 339, 343 (5th Cir. 2014). Further, Proposed Intervenors' stake in this suit goes beyond a generalized preference that the case turn out a certain way. *See Texas v. U.S.*, 805 F.3d 653, 657 (5th Cir. 2015).

The last prong focuses on whether the existing parties adequately represent the Proposed Intervenors' interests. The burden to prove that they do not is not a substantial one. *Brumfield*, 749 F.3d at 345. Proposed Intervenors need only show that the existing representation "may be inadequate." *Texas*, 805 F.3d at 661 (quoting *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972)); *Doe #1*, 256 F.3d at 380 (same).

Motions and briefs filed by Defendants have focused primarily on the effects Plaintiffs' requested relief would have for Dallas County and its jail. Proposed Intervenors' stated reason for filing the Motion was to "ensur[e] that Texas's interests are zealously represented before the Court by the elected officials entrusted with defending the state's interests." Proposed Intervenors' Motion raises valid concerns that existing representation may be inadequate to represent Proposed Intervenor's interests.

6

### III.     Conclusion

Because Proposed Intervenors have met the requirements of Federal Rule of Civil Procedure 24(a)(2), the Court finds intervention by right is appropriate.  Accordingly, the Court need not consider Proposed Intervenors' alternative argument that they are entitled to permissive intervention under Rule 24(b).  *See, e.g., Securities & Exch. Comm'n v. Sethi Petroleum LLC*, No. 4:15-CV-00338, 2020 WL 363777, at *8 (E.D. Tex. Jan. 22, 2020).  Proposed Intervenors' Motion to Intervene is granted.

**SO ORDERED.**

Signed April 20, 2020

_____
JUDGE ADA BROWN
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS