UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| OSCAR SANCHEZ, MARCUS WHITE, TESMOND MCDONALD, MARCELO PEREZ, ROGER MORRISON, KEITH BAKER, PAUL WRIGHT, TERRY MCNICKELS, JOSE MUNOZ, KIARA YARBOROUGH, OLIVIA WASHINGTON, and IDEARE BAILEY*; on their own and on behalf of a class of similarly situated persons*;<br><br>*Petitioners/Plaintiffs*,<br><br>v.<br><br>DALLAS COUNTY SHERIFF MARIAN BROWN, *in her official capacity*; DALLAS COUNTY, TEXAS;<br><br>*Respondents/Defendants* | Civil Action No. 20-cv-832 |

**PLAINTIFFS' (1) RESPONSE TO STATE INTERVENORS' NOTICE OF SUPPLEMENTAL AUTHORITY AND (2) NOTICE OF NEW AUTHORITY**

  I.   **Response to State Intervenors' Notice of Supplemental Authority**

State Intervenors' misleadingly characterize the Fifth Circuit's decision in *Valentine v. Collier*, No. 20-20207 (5th Cir. Apr. 22, 2020).

First, Intervenors ask this Court to add a subjective-intent prong to the deliberate-indifference test, which the Supreme Court and Fifth Circuit have rejected. Pursuant to *Farmer* and en banc decisions of the Fifth Circuit, the question is whether Defendants "know[] of and disregard[] an excessive risk to inmate safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Williams v. Hampton*, 797 F.3d 276, 281 (5th Cir. 2015) (en banc); *Hare*, 74 F.3d at 648–49 (en banc); *see also Garza v. City of Donna*, 922 F.3d 626, 635–36 (5th Cir.), *cert. denied sub*

1

*nom. Garza v. City of Donna, Texas*, 140 S. Ct. 651, 205 L. Ed. 2d 386 (2019).[1] To the extent *Valentine* conflicts with precedent from the Supreme Court and the *en banc* Fifth Circuit, the Court must follow the latter. *See Garza*, 922 F.3d at 635–36 (stating that although the Fifth Circuit at times has referenced "subjective intention," the appellate court has "far more often" adhered to *Farmer*). Even if subjective intent were required, Defendants' conduct would violate the Constitution. The evidence shows that Defendants *know* they should be complying with *at least* the CDC guidelines, and that they are not doing even that. The fact that Defendants will attempt to convince this Court that they *are* complying with those guidelines, does not amount to a subjective belief that their failure to do so is sufficient. And, confusingly, Defendants' own Notice to this Court filed this morning suggests they do not in fact believe COVID-19 poses an objective threat to Plaintiffs' safety. Dkt. 77 at 2–3 (citing *Sheperd v. Dallas County*, 591 F.3d. 445, 454 (5th Cir. 2009), a case dealing with a detainee's damages claim around hypertension).

---

[1] Intervenors tell this Court that the *Valentine* panel cited *Farmer* for the proposition that officials must *also* "subjectively believe the measures they are taking are inadequate." *See* Dkt. 76 (Intervenors' Notice) at 2 (telling this Court that "[T]he Fifth Circuit held that *still* would not be enough to show an Eighth Amendment violation because plaintiffs failed to cite 'evidence that [defendants] *subjectively believe* the measures they are taking are inadequate.' *Id.* at 7–8 **(citing *Farmer v. Brennan*, 511 U.S. 825 (1994))**.) (emphasis added). But the *Valentine* decision *did not cite Farmer for that proposition*, as the Court can read for itself. For convenience, the full excerpt from *Valentine* is reproduced here:

> The district court thus collapsed the objective and subjective components of the Eighth Amendment inquiry established in *Farmer*, treating inadequate measures as dispositive of the Defendants' mental state. Such an approach resembles the standard for civil negligence, which *Farmer* explicitly rejected. Though the district court cited the Defendants' general awareness of the dangers posed by COVID-19, it cited no evidence that they subjectively believe the measures they are taking are inadequate. To the contrary, the evidence shows that TDCJ has taken and continues to take measures—informed by guidance from the CDC and medical professionals—to abate and control the spread of the virus. *See* Dkt. 36-7 (declaration of TDCJ Health Services Director); Dkt. 36 at 13–20 (compiling evidence of protective measures take by TDCJ). Although the district court might do things differently, mere "disagreement" with TDCJ's medical decisions does not establish deliberate indifference. *Cadena*, 946 F.3d at 729.

Contrary to the Intervenors' assertion to this Court, there is no citation to *Farmer* for the proposition that officials must "subjectively believe the measures they are taking are inadequate."

2

Second, the Intervenors are mistaken on yet another point: the CDC guidelines do not determine the constitutional floor, and the *Valentine* opinion cites no authority for that principle. Nor could it. The Supreme Court made abundantly clear 40 years ago that although "recommendations of these various groups may be instructive in certain cases, they simply do not establish the constitutional minima; rather, they establish goals recommended by the organization in question." *Bell v. Wolfish*, 441 U.S. 520, 543 n.27 (1979) (holding that recommendations of a federal task force were "not determinative of the requirements of the Constitution"); *cf.* Edward J. Hanlon, "Proof of Unconstitutional Prison Conditions," 24 AMJUR POF 3d 467 § 7 ("Most courts have held that it is improper to attempt to assess whether a given occupancy level violates a pretrial detainee's Fourteenth Amendment rights or a prisoner's Eighth Amendment rights by reference to standards set by a professional organization or by expert testimony based on such standards.") (citing cases); *Moralis v. Fageole*, No. 06 C 2034, 2007 WL 2893652, at (CD. Ill. Sept. 28, 2007) ("[D]efendants cannot simply escape their duty to provide dental care to those detained in their jail by asserting [the United States Marshall Service agreement] does not authorize the treatment."). Indeed, as one court observed,

> Though the CDC has recommended public health guidance for detention facilities . . . these measures are inadequate to sufficiently decrease the substantial likelihood that Petitioner will contract COVID-19. As prison officials are beginning to recognize around the country, even the most stringent precautionary measures— short of limiting the detained population itself—simply cannot protect detainees from the extremely high risk of contracting this unique and deadly disease.

*Malam v. Barr*, No. 20-10829, 2020 WL 1672662, at *8 (E.D. Mich. Apr. 5, 2020), as amended (Apr. 6, 2020).

Third, the State Intervenors imply that the named Plaintiffs failed to exhaust administrative remedies for purposes of relief under the PLRA. That is wrong. Named Plaintiffs Sanchez, Morrison, Perez, McNickles, Washington, Yarborough, Munoz, and Wright all filed the requisite

3

emergency grievances, including in many instances filing first and second appeals that the inmate handbook does not require. *See* Dkts. 63-2–63-4. The named Plaintiffs who did not file grievances, specifically White, McDonald, Baker, and Bailey took extraordinary efforts in their attempts to comply with the grievance procedures, including gluing requests for grievances to their door with toothpaste, and writing grievances on other pieces of paper that guards refused to collect. *Id.* These facts relating to PLRA exhaustion in *this* case contrast sharply to the facts in *Valentine*, where plaintiffs did not file grievances at all. Moreover, the question of exhaustion was fully briefed in the context of the Motions to Dismiss, which this Court has already denied. Dkt. 71.

Finally, State Intervenors cite *Calderon v. Ashmus*, 523 U.S. 740 (1998), albeit without explanation, for the proposition that there is no such thing as a habeas class action. As Plaintiffs explained in their response in opposition to Defendants' and Intervenors' Motions to Dismiss, habeas relief *can* be granted to a class of similarly situated people and courts have been and are providing such relief. *See* Dkt. 63 at 41–44. *Calderon*, which was decided in 1998, has not prevented numerous other courts from subsequently certifying or provisionally certifying classes of people seeking habeas relief. *See Ali v. Ashcroft*, 213 F.R.D. 390 (W.D. Wash. 2003) (granting motion for class certification in habeas case), *aff'd Ali v. Ashcroft*, 346 F.3d 873 (9th Cir. 2005), *withdrawn and amended on other grounds on reh'g, Ali v. Gonzalez*, 421 F.3d 795 (9th Cir. 2005); *Sacora v. Thomas*, No. CV 08-578-MA, 2009 WL 4639635 (D. Or. Dec. 3, 2009) (granting class certification of all inmates in habeas challenge), *aff'd*, 628 F.3d 1059 (9th Cir. 2010). And in the past few weeks, courts have granted classwide relief to inmates bringing similar claims. *E.g.*, *Savino v. Souza*, No. 20-cv-10617-WGY, Dkt. No. 61 at 2 (D. Mass. 2020). Finally, Federal Rule of Civil Procdure 81(a) makes clear that the federal rules, including Rule 23, apply to habeas petitions. Fed. R. Civ. P. 81(a).

**II.    Plaintiffs' Notice of New Authority**

4

On April 22, 2020, Judge James S. Gwin, or the Northern District of Ohio, granted "enlargement" to a subclass of medically vulnerable people detained in Elkton Federal Correctional Institution. Exhibit A (*Wilson v. Williams*, Case No. 4:20-cv-00794, ECF 22 (N.D. Ohio Apr. 22, 2020). As the court explained, "[e]nlargement is not release," but rather a change in the "place of custody." *Id.* at 8. First, the court certified a class for purposes of preliminary relief. *Id.* at 15. Second, the court held that petitioners were likely to succeed on the merits of their claim that officials were deliberately indifferent, pointing to the fact that "Elkton has altogether failed to separate its inmates at least six feet apart, despite clear CDC guidance for some time that such measures are necessary to stop the spread and save lives." *Id.* Moreover, "it is more than mere speculation that the virus will continue to spread and pose a danger to inmates if BOP does nto increase its efforts to stop the spread." *Id.* at 17 (finding irreparable harm). Finally, the court rejected many of the public-interest and balance-of-harms arguments that Defendants and Intervenors have made in this case, noting the "continued risk of harm to others, including prison staff, if inmates remain in the prison and the virus continues to thrive among the dense inmate population." *Id.* at 18; *see generally id.* at 17–19.

The court ordered relief sufficient to protect the lives and constitutional rights of the medically vulnerable subclass, specifically requiring Respondents to identify all members of the subclass within 24 hours and then to evaluate each subclass member's eligibility for transfer out of the prison "through any means, including but not limited to compassionate release, parole or community supervision, transfer furlough, or non-transfer furlough within two (2) weeks." *Id.* at 20. Any medically vulnerable person who is not eligible for the listed transfers, "must be transferred to another BOP facility where appropriate measures, such as testing and single-cell

5

placement, or social distancing, may be accomplished." *Id.* at 21–21. This Court could similarly grant "enlargement" to the medically vulnerable subclasses.

Dated: April 23, 2020.

Respectfully submitted,

_____
AMERICAN CIVIL LIBERTIES FOUNDATION
Andrea Woods*
N.Y. Bar No. 5595509
Brandon Buskey*
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2528
*awoods@aclu.org*

Henderson Hill*
N.C. Bar No. 18563
201 W. Main St. Suite 402
Durham, NC 27701
(919) 682-9563
*hhill@aclu.org*

Amy Fettig*
D.C. Bar No. 484883
915 15th Street N.W., 7th Floor
Washington, D.C. 20005
(202) 548-6608
*afettig@aclu.org*

_____
ACLU FOUNDATION OF TEXAS
Brian Klosterboer
Texas. Bar No. 24107833
Adriana Piñon**
Texas Bar No. 24089768
Andre Segura
Texas Bar No. 24107112
5225 Katy Fwy., Suite 350
Houston, TX 77007
Tel: (713) 942-8146
Fax: (346) 998-1577

_____
CIVIL RIGHTS CORPS
Katherine Hubbard***
D.C. Bar No. 1500503
Elizabeth Rossi*
D.C. Bar No. 1500502
1601 Connecticut Ave NW, Suite 800
Washington, D.C. 20009
(202) 894-6126
*katherine@civilrightscorps.org*
*elizabeth@civilrightscorps.org*

_____
SUSMAN GODFREY L.L.P.
Barry Barnett
Texas Bar No. 01778700
8115 Preston Road, Suite 575
Dallas, TX 75225
(866) 754-1900
*bbarnett@susmangodfrey.com*

Michael Gervais*
N.Y. Bar No. 5122890
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
(310) 789-3100
*mgervais@susmangodfrey.com*

_____
NEXT GENERATION ACTION NETWORK
Alison Grinter
Texas Bar 24043476
Kim T. Cole
Texas Bar No. 24071024
1808 South Good Latimer Expressway
Dallas, TX 75226
 (214) 704-6400
*agrinter@thengan.com*
*kcole@thengan.com*

ATTORNEYS FOR PETITIONERS/PLAINTIFFS
**admitted pro hac vice*
***N.D. Texas admission application forthcoming*
**** pro hac vice application forthcoming*

6