**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| OSCAR SANCHEZ, TESMOND MCDONALD, MARCELO PEREZ, KEITH BAKER, PAUL WRIGHT, OLIVIA WASHINGTON, and IDEARE BAILEY, *on their own and on behalf of a class of similarly situated persons,*<br><br>*Plaintiffs*,<br>v.<br><br>DALLAS COUNTY SHERIFF MARIAN BROWN, *in her official capacity,* and DALLAS COUNTY, TEXAS,<br><br>*Respondents/Defendants.* | Civil Action No. 3:20-cv-832 |

**DETAINEE PLAINTIFFS'
REPLY IN SUPPORT OF MOTION TO COMPEL VIDEO EVIDENCE**

## I. INTRODUCTION

Jose Garcia, a detainee in Defendants' custody, informed Defendants in April of 2020 about a set of COVID-19 infections in the tank where he resided. Fly Dec. at ¶¶ 2-6. He sought medical treatment for those affected and protective measures for others around the affected detainees. *Id.* Because of his efforts, several detainees with severe COVID-19 symptoms received treatment and were provided with medical isolation. *Id.* Although Mr. Garcia's efforts helped avoid further spread of the infection in his tank, they also required Defendants to report higher COVID-19 case numbers and take additional protective measures. Defendants responded to his efforts by handcuffing him and, while he was handcuffed, beating him and spraying him with mace. This brutal assault left him so bruised and swollen that he was "barely recognizable." Fly Dec. at ¶ 7. An officer then menacingly asked the other detainees of the tank: "anyone else have

1

anything to say?" *Id.*; ECF No. 259-2 (Edwards Aff.) at 2; ECF No. 259-3 (Sauls Aff.) at 2. The message was clear—anyone who increased the burden on Defendants to report COVID-19 infections or provide protections would suffer the same consequences.

Defendants do not dispute that they possess video of this assault. Mot. Ex. E ("Video of that specific incident exists."). Nor do they argue that producing this video would present burden or confidentiality issues. They cannot: they agreed to produce hundreds of videos as part of a discovery compromise, and they have produced every single one of those hundreds of videos except for this one. As a result, Defendants rest their refusal to produce entirely on two objections: (1) relevance and (2) "unfair surprise" and "prejudice" based on the date on which Plaintiffs brought this motion.

Defendants should fail on both objections. First, relevance at the discovery stage broadly "encompasses 'any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470–71 (N.D. Tex. 2005) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). Defendants' assault of Mr. Garcia falls well within this broad requirement. For example, it bears directly on Defendants' pattern of suppressing reports related to COVID-19, which will show their deliberate indifference—an element of the post-adjudication detainees' claims. Second, Defendants present no authority to suggest that "unfair surprise" or "prejudice" are a basis to deny a motion to compel. And regardless, Defendants cannot resist production based on a delay for which they are responsible.

## II. ARGUMENT

### A. The Video Showing Defendants Beating Mr. Garcia Because He Reported a COVID-19 Outbreak in His Tank Falls Well Within the Broad Relevance Standard for Discovery

Plaintiffs' motion explains that for purposes of discovery, relevance is broadly construed in the Fifth Circuit and "encompasses 'any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Merrill*, 227 F.R.D. at 470–71 (quoting *Oppenheimer Fund, Inc.*, 437 U.S. at 351); *see also* Mot. at 8. This motion also explains that "under Fifth Circuit law, the party resisting discovery must show specifically how each discovery request is not relevant or otherwise objectionable." *Samsung Elecs. Am. Inc. v. Yang Kun "Michael" Chung*, 325 F.R.D. 578, 594 (N.D. Tex., Mar. 7, 2017); *see also* Mot. at 7. Defendants do not dispute this legal standard. Indeed, at no point in their motion do they cite any law addressing relevance in discovery. Instead they rely on inapposite opinions addressing evidence that was discovered, but that ultimately was found not to carry the burden of proof on summary judgment or at trial. For example, Defendants rely on an opinion holding, on review of a grant of summary judgment, that a plaintiff's evidence of 27 complaints about a police department's use of force failed to show that this number was higher than would be expected for a department of that size. Opp. at 6 (citing *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 851 n.4 (5th Cir. 2009)). Defendants conclude that, because "Plaintiffs have failed to even attempt to carry this burden" to show that the number of assaults is relatively high, Plaintiffs are entitled to no discovery into Defendants' assault of Mr. Garcia. Opp. at 7. First, this opinion is irrelevant because Plaintiffs do not attempt to infer a custom from a high frequency of beatings. Second, Defendants fundamentally misunderstand the role of discovery when they reason that in order for

3

Plaintiffs to obtain discovery, they must first "carry th[e] burden" of proof they will face at trial.[1] Opp. at 7.

The evidence at issue falls well within the broad relevance standard that applies to discovery. This evidence bears directly on deliberate indifference, an element of post-conviction detainees' claims that can be satisfied by evidence "that officials . . . ignored [detainees'] complaints, intentionally treated [them] incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Defendants have engaged in a pervasive pattern of conduct intended to actively suppress reports of COVID-19 in the Jail. This suppression artificially lowered the numbers of cases and—potentially—deaths that Defendants must report to state authorities, and it did so at the expense of detainees' health and safety. This pattern, detailed in Plaintiffs' opposition to Defendants' motion for summary judgment, includes the Jail Defendants' avoidance of asymptomatic testing, systematic exclusion of people released from custody from reported COVID-19 cases and deaths, suppression of grievances, punitive quarantine conditions for detainees who report symptoms, and multiple assaults on detainees reporting conditions related to COVID-19. ECF No. 281 at 22-27. Defendants' assault of Mr. Garcia in order to suppress COVID-19 reporting is centrally relevant to this pattern of suppression. Additionally, Sheriff Brown's failure to so much as "look into" the assault on Mr. Garcia, App. at 001-005

---

[1] Most opinions Defendants cite in their opposition similarly involve a court's consideration of evidence in a merits determination rather than a discovery dispute. *Fraire v. City of Arlington*, 957 F.2d 1268, 1281 (5th Cir. 1992) (considering a grant of summary judgment); *Bennett v. City of Slidell*, 728 F.2d 762, 765 (5th Cir. 1984) (considering the denial of a post-trial motion on the merits); *Lopez v. City of Austin, Tex.*, 710 F.2d 196, 197 (5th Cir. 1983) (citing Fed. R. Civ. Proc. 52(a) and reviewing findings of fact after a bench trial). Defendants also cite *Marrero v. City of Hialeah*, 625 F.2d 499, 512 (5th Cir. 1980), where the court remanded for an opportunity to replead a complaint—an outcome that has no bearing on this discovery motion.

(Deposition of Sheriff Marian Brown (March 31, 2021) at 176:11-21), even after officers from a law enforcement agency attempted to question Mr. Garcia about it, ECF No. 259-1 (Garcia Aff.), further serves as direct evidence of her deliberate indifference. Finally, this assault is further evidence in a pattern showing that, due to a lack of policies or training, staff are unprepared to properly respond to detainee requests related to COVID-19.

It is particularly clear here that the assault on Mr. Garcia is relevant to the parties' claims and defenses because the parties have already briefed this assault in their summary judgment papers. Defendants argue on summary judgment that "[d]eliberate indifference cannot be inferred from a negligent or even a grossly negligent response to a substantial risk of serious harm," but instead "requires a showing of a wanton disregard for the prisoners' safety or recklessness." ECF No. 272 at 16 (quotations omitted). They contend that Plaintiffs' evidence does not rise to the level of a "wanton disregard." *Id.* Plaintiffs counter by demonstrating, in part, that the Sheriff lacked "interest in a brutal assault that occurred on a detainee by her staff when the detainee complained to guards." ECF No. 281 at 26. The video evidence Defendants attempt to withhold here would serve as direct evidence of this assault and would be squarely relevant to this dispute. Defendants' opposition to this motion further underscores the need for this evidence. Defendants signal that at trial they will argue that Plaintiffs' only evidence of the assault should be discounted as "the declaration of one of Plaintiffs' since-withdrawn counsel incorporating hearsay from non-party inmates." Opp. at 1. The video at issue is relevant to this factual dispute because it serves as direct corroboration of the eyewitness accounts of the assault that the declaration contains.

Defendants make two relevance arguments contending that the video of their assault on Mr. Garcia should be excluded from discovery. Both should fail.

First, Defendants contend that the video at issue contains evidence that "the Court had already ruled was irrelevant" during the TRO hearing. Opp. at 3. This is not correct; Defendants mischaracterize the Court's ruling during the TRO hearing. The Court never found the assault on Mr. Garcia to be "irrelevant" as Defendants state; instead, the Court simply ruled that the Fly declaration, "filed the same day when it was proposed to be used for evidence," should not be a part of the TRO record "because Defendants didn't get to have a chance to be heard on that." App. at 006-010 (Motion for Temporary Restraining Order Transcript (April 24, 2020) at 7:23-24, 8:4-5). This exclusion of the late-breaking Fly Declaration at the TRO hearing has no bearing whatsoever on whether this separate, video evidence of the same incident is relevant.

Second, Defendants contend that the assault on Mr. Garcia is an "isolated incident" that cannot be imputed to the county as a policy or practice. Opp. at 7-8. This contention is simply false. As explained above, *see supra* at 4, this assault is far from an "isolated incident" because it forms but one part of Defendants' systematic suppression of reports related to COVID-19. In fact, it is not even the only occasion on which a detainee was brutally beaten in retaliation for reporting about COVID-19. Named Plaintiff Oscar Sanchez similarly reports that Jail staff assaulted him because he reported poor conditions in quarantine. App. at 011-015 (Deposition of Oscar Sanchez at 20:10-22:2). Defendants' claim is not only false; it also misunderstands the relevance standard in discovery. In making this argument, Defendants cite only opinions addressing the standard of judgment on municipal liability for the actions of an employee. Opp. at 7 (citing *Bennett v. City of Slidell*, 728 F.2d 762, 765 (5th Cir. 1984); *Fraire v. City of Arlington*, 957 F.2d 1268, 1281 (5th Cir. 1992); *Lopez v. City of Austin, Tex.*, 710 F.2d 196, 197 (5th Cir. 1983); *Marrero v. City of Hialeah*, 625 F.2d 499, 512 (5th Cir. 1980). Like the *Peterson* opinion discussed above, *see supra* at 3, these opinions provide no support whatsoever for the proposition that *discovery* may be denied

on the basis that it addresses an "isolated incident." Indeed, much discovery unearths "isolated incidents" that the parties have the opportunity, in trial, to link together.

### A. Defendants Suffer No "Unfair Surprise" or "Prejudice" from this Motion Seeking Evidence that Defendants Have Been Aware of for a Year and Delayed Producing

Defendants also contend that this motion comes too late and thus should be denied on the bases of "unfair surprise" and "prejudice." Opp. at 8-9.[2] Defendants cite no law supporting the denial of a motion to compel on either of these bases. *Id.* The Court should therefore reject these unsupported arguments. Regardless, Defendants cannot complain because they are responsible for delaying this issue. Defendants admit that they knew about Mr. Garcia's assault at least by April 23, 2020, when Plaintiffs submitted a declaration detailing several eyewitness accounts of the assault. Opp. at 2. Defendants also admit that, in September of 2020, they agreed to produce all videos for a set of locations and dates that included the location and date of this assault. Opp. at 3; Opp. App. at 29-30. The delay between September of 2020 and the filing date of this motion is due entirely to Defendants, who reneged on their agreement to produce the video, misleadingly represented that the video had been destroyed, and then finally admitted that they had the video but refused to produce it. *See* Mot. at 5-6. Although Plaintiffs are not aware of any opinions where a court has considered denying—as Defendants suggest—a motion to compel based on "unfair surprise" or "prejudice," courts have rejected prejudice arguments like Defendants' in other contexts. *E.g.*, *Mondis Tech., Ltd. v. LG Elecs., Inc.*, No. 2:07-CV-565-TJW-CE, 2011 U.S. Dist.

---

[2] Defendants also imply that if this video is produced, Plaintiffs' counsel will provide it to Mr. Garcia. Defendants' sole basis for this accusation is Plaintiffs' statement in prior briefing that, had Defendants destroyed the video, that destruction would prejudice Mr. Garcia's ability to seek recourse for the assault. Opp. at 9 (citing ECF No. 230 at 11). Although Defendants are wrong that Plaintiffs' counsel plans to give this video to Mr. Garcia, Defendants' conjecture about what Plaintiffs' counsel might do to disseminate evidence produced in this case has nothing to do with any of Defendants' arguments against this motion.

LEXIS 48376, at *14 (E.D. Tex. May 5, 2011) ("TPV cannot complain of prejudice when it was TPV's discovery procedures that created, at least in part, the problem. Because TPV produced material information at the last minute, the Court will allow Mondis to amend its infringement contentions at the last minute.").

### A. The Court Need Not Conduct an *In Camera* Review Before Compelling Production of the Video

Defendants request in the alternative that the Court inspect the video of the assault *in camera*. Opp. at 9. Such an inspection to determine relevance is not necessary. It is undisputed that the video shows the assault. Mot. Ex. E ("Video of that specific incident exists."). As a result, there is no dispute regarding what the video shows for the Court to resolve through an *in camera* inspection. Defendants make no confidentiality or privilege objection that would warrant the additional protection of an *in camera* review. However, if the Court wishes to review the video *in camera* before ruling on compelling production of this video, Plaintiffs would not object.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court grant Plaintiffs' motion to compel video evidence of Jail staff assaulting detainee Jose Garcia, including an *in camera* review if the Court deems it necessary.

Respectfully submitted,

/s/ Henderson Hill
AMERICAN CIVIL LIBERTIES FOUNDATION
Andrea Woods*
N.Y. Bar No. 5595509
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2546
*awoods@aclu.org*
Henderson Hill*
N.C. Bar No. 18563
201 W. Main St. Suite 402
Durham, NC 27701
(919) 682-9563
*hhill@aclu.org*

/s/ Adam Safwat
WEIL, GOTSHAL & MANGES LLP
Adam Safwat*
D.C. Bar No. 1024043
Sarah Choi*
D.C. Bar No. 1657764
2001 M Street NW, Suite 600
Washington, D.C. 20036
(202) 682-7000
*adam.safwat@weil.com*
*sarah.choi@weil.com*

/s/ Brian Klosterboer
ACLU FOUNDATION OF TEXAS
Brian Klosterboer
Texas. Bar No. 24107833
Adriana Piñon*
Texas Bar No. 24089768
Savannah Kumar
Texas Bar No. 24120098
Andre Segura
Texas Bar No. 24107112
5225 Katy Fwy., Suite 350
Houston, TX 77007
Tel: (713) 942-8146
Fax: (346) 998-1577

/s/ Elizabeth Rossi
CIVIL RIGHTS CORPS
Elizabeth Rossi*
D.C. Bar No. 1500502
1601 Connecticut Ave NW, Suite 800
Washington, D.C. 20009
(202) 894-6126
*elizabeth@civilrightscorps.org*

/s/ Barry Barnett
SUSMAN GODFREY L.L.P.
Barry Barnett
Texas Bar No. 01778700
8115 Preston Road, Suite 575
Dallas, TX 75225
(866) 754-1900
*bbarnett@susmangodfrey.com*
Michael Gervais*
N.Y. Bar No. 5122890
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
(310) 789-3100
*mgervais@susmangodfrey.com*

/s/ Alison Grinter
NEXT GENERATION ACTION NETWORK
Alison Grinter
Texas Bar 24043476
Kim T. Cole
Texas Bar No. 24071024
1808 South Good Latimer Expressway
Dallas, TX 75226
 (214) 704-6400
*agrinter@thengan.com*
*kcole@thengan.com*

ATTORNEYS FOR PETITIONERS/PLAINTIFFS
*admitted pro hac vice*

9

## **CERTIFICATE OF SERVICE**

This is to certify that on June 24, 2021, a true and correct copy of the foregoing document was served via the Court's CM/ECF system on all counsel registered with that system.

*/s/ Kyle Virgien*  _____

Kyle Virgien